LAW OFFICES
**GRAHAM • VAAGE LLP**
500 NORTH BRAND BOULEVARD
SUITE 1030
GLENDALE, CALIFORNIA 91203
(818) 547-4800  FAX: (818) 547-3100

**Susan L. Vaage, SBN 83125**
e-mail: svaage@grahamvaagelaw.com
**Ann G. Lee, SBN 252412**
e-mail: alee@grahamvaagelaw.com

Attorneys for Creditor, Banco Popular North America

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PUREFITNESS CARLSBAD, INC.,<br><br>　　　　　　　Debtor. | Chapter 11<br><br>CASE NO. 14-03171-MM11<br><br>**BANCO POPULAR NORTH AMERICA'S OPPOSITION TO DEBTOR'S AMENDED EMERGENCY OMNIBUS MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; DECLARATION OF VIJAY KAVURI IN SUPPORT THEREOF**<br><br>Status Conf. Date:　May 29, 2014<br>Hearing Time:　　2:00 p.m.<br>Department:　　　1<br>Room:　　　　　218<br>Place:　　　　　325 West F Street,<br>　　　　　　　　San Diego, CA 92101 |

TO THE HONORABLE MARGARET M. MANN, UNITED STATES BANKRUPTCY JUDGE, AND TO THE DEBTOR, DEBTOR'S COUNSEL, UNITED STATES TRUSTEE, COUNSEL FOR THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:

1

Creditor Banco Popular North America (hereinafter "BPNA") opposes the Debtor's Amended Emergency Omnibus First Day Motion for Order Authorizing Use of Cash Collateral ("Motion") based on the following:

1. **FACTUAL BACKGROUND**

<u>LOAN 1</u>

Prior to June 29, 2005, Debtor Purefitness Carlsbad, Inc. ("Debtor") applied to BPNA for a Small Business Administration ("SBA") loan in the principal amount of $2,000,000.00, to be extended for leasehold improvements to be made for the opening of its health club/gym located at 6215 El Camino Real, Carlsbad, CA.

On or about June 29, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $2,000,000.00. Debtor pledged all of its business assets (e.g., inventory, accounts, and general intangibles, including all proceeds relating to any of the foregoing), except for equipment, as collateral for the loan.

BPNA perfected its interest in Debtor's assets by filing a UCC-1 Financing Statement with the California Secretary of State. Hereinafter the Promissory Note and UCC-1 Financing Statement shall be cumulatively referred to as "Loan 1". The principal of the Debtor, Michael London, executed a personal guarantee, secured by a third position deed of trust on his residential real property and a first position deed of trust on vacant real property located in La Mesa, CA.

Pursuant to the Loan 1 documents, Debtor was required to make regular monthly payments to BPNA. Debtor has failed to make the Loan 1 payment which came due on April 29, 2014. Another payment will come due on May 29, 2014. As of the petition date, April 24, 2014, there is due and owing on Loan 1 the principal sum of $1,441,067.24, plus interest in the amount of $1,362.10 and accruing thereafter at the daily rate of $227.02, plus late charges in the amount of $4,376.24, for a total owing of $1,446,805.58. A summary of the amounts owing are set forth in the BPNA accounting, produced in the ordinary course of business, and attached to the Declaration of Vijay Kavuri filed herewith.

2

In its Motion, Debtor proposes monthly payments on Loan 1 in the amount of $14,634.00. However, Debtor misrepresents that it is current on Loan 1, and fails to explain when or how the past due payment will be made.

LOAN 2

Prior to July 5, 2005, Debtor applied to BPNA for a loan in the principal amount of $600,000.00 and an interim SBA 504[1] loan in the principal amount of $480,000.00, to be extended for its purchase of equipment for its health club/gym located at 6215 El Camino Real, Carlsbad, CA.

On or about July 5, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $600,000.00, and a Commercial Security Agreement whereby all of Debtor's equipment was pledged as collateral for the loan.

On or about July 5, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $480,000.00, and a Commercial Security Agreement whereby all of Debtor's equipment was pledged as collateral for the loan.

BPNA perfected its interest in the equipment by filing a UCC-1 Financing Statement with the California Secretary of State. Hereinafter the two Promissory Notes for the 504 loan, the two Commercial Security Agreements, and UCC-1 Financing Statement shall be cumulatively referred to as "Loan 2". Pursuant to the Loan 2 documents, Debtor was required to make regular monthly payments to BPNA, with the final payment due on July 5, 2015. Debtor has failed to make the Loan 2 payment which came due on April 5, 2014 and all payments due thereafter. As of the petition date, April 24, 2014, there is due and owing on Loan 2 the principal sum of $100,871.09, plus interest in the amount of $737.55 and accruing thereafter at the daily rate of $14.71, plus late charges in the amount of $1,479.68, for a total owing of $103,088.32. A summary of the amounts

---

[1] The SBA 504 loan program provides financing for major fixed assets, such as long-term equipment. A 504 loan is funded by a loan from a bank secured with a first lien usually covering 50% of the cost of the equipment, a loan from a certified development company secured with a second lien covering a maximum of 40% of the cost, and contribution of at least 10% of the cost from the business which is being financed.

owing are set forth in the BPNA accounting, produced in the ordinary course of business, and attached to the Declaration of Vijay Kavuri filed herewith.

In its Motion, Debtor proposes monthly payments on Loan 2 in the amount of $7,398.00. However, Debtor misrepresents that it is current on Loan 2, and fails to explain when or how the past due payments will be made.

BPNA would not object to the interim use of cash collateral if (1) the Debtor would bring all past due payments on Loan 1 and Loan 2 current, (2) enter into a Stipulation for Adequate Protection, on terms acceptable to BPNA, whereby Debtor will agree to make regular monthly payments on both Loans, and (3) grant a replacement lien to BPNA.

BPNA objects to the Debtor's proposed use of its cash collateral to the extent that the payments are not being paid in accordance with the Loan 1 and Loan 2 documents.

## 2.    LEGAL ISSUES PRESENTED.

A debtor may not use cash collateral unless the secured creditor consents or, absent such consent, the court authorizes such use after a noticed hearing. 11 U.S.C. §362(c)(2)(B). The court's allowance of the use of cash collateral must be conditioned upon a finding of adequate protection. 11 U.S.C. §363(e). BPNA is collateralized by perfected security interests in the Debtor's business assets and equipment, including but not limited to inventory, accounts, and general intangibles. This interest must be adequately protected. *In re Safeguard Self-Storage Trust*, 2 F.3d 967, 973 (9th Cir. 1993).

BPNA has provided proof of its secured interests in the assets and equipment. The Debtor must provide proof of adequate protection of those interests.

It is established law that adequate protection is intended to maintain the status quo ante, and to assure that the creditor does not suffer a diminution of the value of its collateral while the automatic stay remains in effect. *United Sav. Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1989).

///

///

### 3. CONCLUSION

Applying the law as set forth above, BPNA is entitled to adequate protection if the Debtor continues to use its cash collateral. BPNA respectfully requests that the Debtor's Motion be disallowed unless and until all past due payments on Loan 1 and Loan 2 are brought current, and further requests that BPNA be repaid at the monthly Note rates and in the required Note amounts on both Loans pursuant to a Stipulation for Adequate Protection, and that BPNA be granted a replacement lien.

Date: May 23, 2014

GRAHAM • VAAGE LLP

By: *Ann G. Lee*
SUSAN L. VAAGE
ANN G. LEE
Attorneys for Creditor
Banco Popular North America

## DECLARATION OF VIJAY KAVURI

I, Vijay Kavuri, hereby declare and state as follows:

1. I am a Loan Workout Officer of Banco Popular North America ("BPNA"). The matters set forth in this declaration are known to me to be true of my own personal knowledge or from the books and records of BPNA which are maintained in the ordinary course of BPNA's business.

2. I am one of BPNA's custodians of records presently having primary responsibility for two of the loans which are the subject of Debtor's Motion for Order Authorizing Use of Cash Collateral ("Motion"). As indicated below, I know the following facts of my own personal knowledge or have gained knowledge of the facts through the business records of BPNA, and if called upon to do so, could and would competently testify thereto. I am personally familiar with the business records of BPNA, and this declaration is based on records maintained by BPNA. BPNA is the owner and holder of the obligations granted by BPNA to Debtor Purefitness Carlsbad, Inc. ("Debtor").

3. A substantial part of my job responsibilities with BPNA includes the supervision and administration of BPNA's loans which are currently in default, such as those which are the subject of Debtor's Motion. In the course of performing those responsibilities, I personally prepare and maintain BPNA's records, and additionally, supervise the preparation and maintenance of BPNA's records relating to extensions of credit by BPNA to its borrowers. I have personally performed such duties and responsibilities with regard to the Loans which are the subject of the Motion and this Opposition.

4. In my capacity, and in the course and scope of my duties and responsibilities, I have become personally familiar with the manner of creation, as well as the procedures involved in the preparation and maintenance of BPNA's records as they relate to all aspects of lending, and in particular, the preparation of lines of credit, credit agreements, promissory notes, guarantees, collateral documents, underwriting criteria, collateral valuation and all similar documentation in BPNA's credit files prepared concerning extensions of credit by BPNA to its loan customers, as well as the collection of extensions of credit which are not paid.

5. I have personally been involved in attempts to collect the amounts due under the loans extended to Debtor and set forth herein is a summary of the status of said loans:

LOAN 1

Prior to June 29, 2005, Debtor applied to BPNA for a Small Business Administration ("SBA") loan in the principal amount of $2,000,000.00, to be extended for leasehold improvements to be made for the opening of its health club/gym located at 6215 El Camino Real, Carlsbad, CA.

On or about June 29, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $2,000,000.00. A true and correct copy of said Promissory Note is attached hereto as Exhibit "1". Debtor pledged all of its business assets (e.g., inventory, accounts, and general intangibles, including all proceeds relating to any of the foregoing), except for equipment, as collateral for the loan.

BPNA perfected its interest in Debtor's assets by filing a UCC-1 Financing Statement with the California Secretary of State, a true and correct copy of which is attached hereto as Exhibit "2". Hereinafter the Promissory Note and UCC-1 Financing Statement shall be cumulatively referred to as "Loan 1". The principal of the Debtor, Michael London, executed a personal guarantee, secured by a third position deed of trust on his residential real property and a first position deed of trust on vacant real property located in La Mesa, CA.

Pursuant to the Loan 1 documents, Debtor was required to make regular monthly payments to BPNA. Debtor has failed to make the Loan 1 payment which came due on April 29, 2014. Another payment will come due on May 29, 2014. As of the petition date, April 24, 2014, there is due and owing on Loan 1 the principal sum of $1,441,067.24, plus interest in the amount of $1,362.10 and accruing thereafter at the daily rate of $227.02, plus late charges in the amount of $4,376.24, for a total owing of $1,446,805.58. A summary of the amounts owing are set forth in the BPNA accounting, produced in the ordinary course of business, and attached hereto as Exhibit "3".

In its Motion, Debtor proposes monthly payments on Loan 1 in the amount of $14,634.00. However, Debtor misrepresents that it is current on Loan 1, and fails to explain when or how the past due payment will be made.

LOAN 2

Prior to July 5, 2005, Debtor applied to BPNA for a loan in the principal amount of $600,000.00 and an interim SBA 504[2] loan in the principal amount of $480,000.00, to be extended for its purchase of equipment for its health club/gym located at 6215 El Camino Real, Carlsbad, CA.

On or about July 5, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $600,000.00, and a Commercial Security Agreement whereby all of Debtor's equipment was pledged as collateral for the loan. True and correct copies of the Promissory Note and Commercial Security Agreement are attached hereto as Exhibits "4" and "5", respectively.

On or about July 5, 2005, Debtor executed and delivered to BPNA a Promissory Note in the principal amount of $480,000.00, and a Commercial Security Agreement whereby all of Debtor's equipment was pledged as collateral for the loan. True and correct copies of the Promissory Note and Commercial Security Agreement are attached hereto as Exhibits "6" and "7", respectively.

BPNA perfected its interest in the equipment by filing a UCC-1 Financing Statement with the California Secretary of State, a true and correct copy of which is attached hereto as Exhibit "8". Hereinafter the two Promissory Notes for the 504 loan, the two Commercial Security Agreements, and UCC-1 Financing Statement shall be cumulatively referred to as "Loan 2". Pursuant to the Loan 2 documents, Debtor was required to make regular monthly payments to

---

[2] The SBA 504 loan program provides financing for major fixed assets, such as long-term equipment. A 504 loan is funded by a loan from a bank secured with a first lien usually covering 50% of the cost of the equipment, a loan from a certified development company secured with a second lien covering a maximum of 40% of the cost, and contribution of at least 10% of the cost from the business which is being financed.

BPNA, with the final payment due on July 5, 2015. Debtor has failed to make the Loan 2 payment which came due on April 5, 2014 and all payments due thereafter. As of the petition date, April 24, 2014, there is due and owing on Loan 2 the principal sum of $100,871.09, plus interest in the amount of $737.55 and accruing thereafter at the daily rate of $14.71, plus late charges in the amount of $1,479.68, for a total owing of $103,088.32. A summary of the amounts owing are set forth in the BPNA accounting, produced in the ordinary course of business, and attached hereto as Exhibit "9".

In its Motion, Debtor proposes monthly payments on Loan 2 in the amount of $7,398.00. However, Debtor misrepresents that it is current on Loan 2, and fails to explain when or how the past due payments will be made.

6. BPNA would not object to the interim use of cash collateral if (1) the Debtor would bring all past due payments on Loan 1 and Loan 2 current, (2) enter into a Stipulation for Adequate Protection, on terms acceptable to BPNA, whereby Debtor will agree to make regular monthly payments on both Loans, and (3) grant a replacement lien to BPNA.

7. BPNA objects to the Debtor's proposed use of its cash collateral to the extent that the payments are not being paid in accordance with the Loan 1 and Loan 2 documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 23rd day of May, 2014, at Rosemont, Illinois.

                                                   /s/ Vijay Kavuri
                                                 Vijay Kavuri, Declarant