# **EXHIBIT 1**



U.S. SMALL BUSINESS ADMINISTRATION

U.S. Small Business Administration

# NOTE

| SBA Loan # | 40-02 |
|---|---|
| SBA Loan Name | PUREFITNESS CARLSBAD, INC. |
| Date | June 29, 2005 |
| Loan Amount | $2,000,000.00 |
| Interest Rate | Variable |
| Borrower | PUREFITNESS CARLSBAD, INC. |
| Operating Company | N/A |
| Lender | BANCO POPULAR NORTH AMERICA, a New York State banking corporation |

1. **PROMISE TO PAY:**

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of Two Million & 00/100 Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

3. **PAYMENT TERMS:**

   Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

   The interest rate on this Note will fluctuate. The initial interest rate is 8.50% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. The initial interest rate must remain in effect until the first change period begins.

   Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month of initial disbursement on this Note and every month thereafter; payments must be made on the same day as the date of initial disbursement on this Note in the months they are due.

   Borrower must pay principal and interest payments of $17,356.46 every month, beginning seven months from the month of initial disbursement on this Note; payments must be made on the same day as the date of initial disbursement on this Note in

SBA FORM 147 (06/03/02) Version 4.1

the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

Additional payment charges apply. When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:

a. During the first year after the date on which the loan is first disbursed, 5% of the total prepayment amount;

b. During the second year after the date on which the loan is first disbursed, 3% of the total prepayment amount; and

c. During the third year after the date on which the loan is first disbursed, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable 20 years from date of initial disbursement.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

  A. Fails to do anything required by this Note and other Loan Documents;
  B. Defaults on any other loan with Lender;
  C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
  D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
  E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
  F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
  G. Fails to pay any taxes when due;

SBA FORM 147 (06/03/02) Version 4.1

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I. Has a receiver or liquidator appointed for any part of their business or property;
J. Makes an assignment for the benefit of creditors;
K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;
B. Collect all amounts owing from any Borrower or Guarantor;
C. File suit and obtain judgement;
D. Take possession of any Collateral; or
E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C. Release anyone obligated to pay this Note;
D. Compromise, release, renew, extend or substitute any of the Collateral; and
E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.
B. Borrower waives all suretyship defenses.
C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

SBA FORM 147 (06/03/02) Version 4.1

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

## 10. STATE-SPECIFIC PROVISIONS:

Borrower acknowledges this Note is secured by a Deed of Trust in favor of Lender on real property located in SAN DIEGO County, State of California. That Deed of Trust contains the following due-on-sale provision:

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed Of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

## 11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

PUREFITNESS CARLSBAD, INC.

By: _____
MICHAEL LONDON, President of PUREFITNESS CARLSBAD, INC.

The guaranteed portion of the outstanding principal balance of this note has been transferred to a Registered Holder for value

X _____

SBA FORM 147 (06/03/02) Version 4.1

**EXHIBIT 2**

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 4595090002
FILING NUMBER: 05-7036619118
FILING DATE: 8/4/2005 10:42:35 AM
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

- 1a. ORGANIZATION'S NAME: PUREFITNESS CARLSBAD, INC.
- 1c. MAILING ADDRESS: 501 W. BROADWAY, SUITE F
- CITY: SAN DIEGO
- STATE: CA
- POSTAL CODE: 92101
- COUNTRY: USA
- 1e. TYPE OF ORGANIZATION: Corporation
- 1f. JURISDICTION OF ORGANIZATION: CA
- 1g. ORGANIZATIONAL ID#: 02586993

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - (none)

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

- 3a. ORGANIZATION'S NAME: BANCO POPULAR NORTH AMERICA
- 3c. MAILING ADDRESS: 9600 W. BRYN MAWR
- CITY: ROSEMONT
- STATE: IL
- POSTAL CODE: 60018
- COUNTRY: USA

**4. This FINANCING STATEMENT covers the following collateral:**

ALL INVESTMENTS, INVENTORY, CHATTEL PAPER, ACCOUNTS, AND GENERAL INTANGIBLES; WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KIND RELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING (INCLUDING INSURANCE, GENERAL INTANGIBLES AND OTHER ACCOUNTS PROCEEDS) ON PROPERTY LOCATED AT 6215 EL CAMINO REAL, SUITE 200, CARLSBAD, CA 92008

**5. ALT DESIGNATION:** LESSEE/LESSOR, CONSIGNEE/CONSIGNOR, BAILEE/BAILOR, SELLER/BUYER, AG. LIEN, NON-UCC FILING

**6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]

**7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] All Debtors / Debtor 1 / Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
CA-0-14915400-45401-

FILING OFFICE COPY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 25662370002
FILING NUMBER: 10-72384559
FILING DATE: 07/16/2010 07:40
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
05-7036619118

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**
6a. ORGANIZATION'S NAME
OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

**7. CHANGED (NEW) OR ADDED INFORMATION:**
7a. ORGANIZATION'S NAME
OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY
7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.
a. ORGANIZATION'S NAME
BANCO POPULAR NORTH AMERICA
OR b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA**
CA-0-42349658

FILING OFFICE COPY

**EXHIBIT 3**

** Print Screen **

Bank: 493    Branch: 4    Loan Number: 79001    Name: Purefitness Carlsbad Inc

| Basics | | | |
|---|---|---|---|
| Note Date | 06/29/2005 | Next Due Date | 04/28/2014 |
| Note Amount | $2,000,000.00 | Next Due Amount (Principal & Interest) | $14,634.00 |
| Maturity Date | 06/28/2025 | Interest Paid To Date | 04/18/2014 |
| Days in Year | 365 Day Year | Total Due incl LF+Esc | $0.00 |
| Days in Month | Actual Days | Total Due (All Inclusive) | $0.00 |

Participation(s): 7000004   7349443.29   517.68 04/18/2014   9999983345568   85.28045 UNION PLANT   1

| | | | |
|---|---|---|---|
| | | Guarantee Percentage | $1.00000000 |
| | | Interest Rate | 5.75000000 |
| | | Undisbursed Amount | $0.00 |
| | | Status | Performing |
| | | Past Due Days | 22 |

Next Payment Change
Principal & Interest
Due To Change: 05/28/2014
Payment Change: $14,630.00

06/29/2005
Months to Maturity: 133

Totals for Non-Revolver

Totals to Thu 05/21/2014

| Principal | $1,441,067.24 | Book Retained | $706,122.95 | Book Potential Charge off | $706,122.95 |
| Interest to | $1,363.10 | Refunds Due to Borrower | $0.00 | Net Retained Commitment | $0.00 |
| Late Fees | $4,376.24 | Participant Commitment | $0.00 | Exposure | $706,122.95 |
| Misc Fees | $0.00 | Net Book Retained | $706,122.95 | Notes | |
| Over/Short | $0.00 | LTD Interest Paid | $1,106,462.51 | | |
| Escrow | $50.13 | | | | |
| Total | $1,446,906.84 | | | | |
| Daily Rate | $227.02 | | | | |

☐ GL Balances

05/21/2014 10:14:03

**EXHIBIT 4**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $600,000.00 | 07-05-2005 | 07-05-2015 | *** | 04A0 / U1 | 49 | LS | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** PUREFITNESS CARLSBAD, INC.
501 W. BROADWAY, SUITE F
SAN DIEGO, CA 92101

**Lender:** BANCO POPULAR NORTH AMERICA, a New York State banking corporation
SBA DEPARTMENT
11101 La Reina Avenue, 2nd Floor
Downey, CA 90241

**Principal Amount: $600,000.00** **Date of Note: July 5, 2005**

**PROMISE TO PAY.** **PUREFITNESS CARLSBAD, INC. ("Borrower") promises to pay to BANCO POPULAR NORTH AMERICA, a New York State banking corporation ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thousand & 00/100 Dollars ($600,000.00), together with interest on the unpaid principal balance from July 5, 2005, until paid in full.**

**PAYMENT.** **Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 119 monthly consecutive principal and interest payments in the initial amount of $7,398.49 each, beginning August 5, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the Western Wall Street Journal Prime Rate (currently 6.250%), plus a margin of 2.000 percentage points, resulting in an initial interest rate of 8.250%; and one principal and interest payment of $7,398.35 on July 5, 2015, with interest calculated on the unpaid principal balances at an interest rate based on the Western Wall Street Journal Prime Rate (currently 6.250%), plus a margin of 2.000 percentage points, resulting in an initial interest rate of 8.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Western Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each first day of each calendar quarter. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 6.250%. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream.** NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $150.00. Upon prepayment of this Note, Lender is entitled to the following prepayment fee: Borrower shall have the right at any time and from time to time to prepay in advance of the stated maturity the outstanding principal balance, in whole or in part, upon at least five (5) business days prior notice to the Lender, Borrower voluntarily prepays more than 20 percent of the outstanding principal balance of the loan. Borrower will be required to pay to the Lender a prepayment fee equal to 5% of the principal amount being prepaid if the prepayment occurs at any time prior to the end of year one of the loan term, 3% of the principal amount being prepaid if the prepayment occurs during year two of the loan term, 1% of the principal amount being prepaid if the prepayment occurs during year three of the loan term. Any prepayment after the end of year three of the loan term may be made at par without prepayment consideration.** Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BANCO POPULAR NORTH AMERICA, Loan Operations, 9600 West Bryn Mawr Rosemont, IL 60018.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $10.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase by 5.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the

**PROMISSORY NOTE**
**(Continued)**

Loan No: 19001 | Page 2

---

commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of ORANGE County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: collateral described in a Commercial Security Agreement dated July 5, 2005.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: BANCO POPULAR NORTH AMERICA, a New York State banking corporation, SBA DEPARTMENT, 11101 La Reina Avenue, 2nd Floor, Downey, CA 90241.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan

| Loan No: 9001 | PROMISSORY NOTE (Continued) | Page 3 |

without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

PUREFITNESS CARLSBAD, INC.

By: _____
   MICHAEL LONDON, President of PUREFITNESS CARLSBAD, INC.

LASER PRO Lending, Ver. 5.27.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - CA L:\CA\CFI\LPL\D20.FC TR-3699 PR-27