TENTATIVE RULING

ISSUED BY JUDGE MARGARET M. MANN

Debtor: PUREFITNESS CARLSBAD, INC.

Number: 14-03171-MM11

Hearing: 9:00 AM Tuesday, June 17, 2014

Motion: MOTION FOR USE OF CASH COLLATERAL FILED BY DEBTOR (fr. 6/11/14)

In order for the Court to address the matters on calendar for June 17, 2014 in this case, the Court requires Debtor to provide the following information:

1. The retention agreement between McMillan and Associates and Debtor.

2. The April operating report that became due on May 20, 2014, as well as the current cash balance to date for the Debtor and any related entity, including but not limited to Bonita Athletic Club, Inc.; Michael London Family Trust; PureFitness Downtown Sports Club; PureFitness Holding Company Inc.; PureFitness Pacific Sports Club; Valley Athletic Club LLC; and Westside Athletic Club.

3. An explanation of the asset listed as "EFT" at a value of $241,000.00 in Debtor's schedules, as well as the current value of that asset.

4. The relationship, duties and any income, payments or other benefits received over the last 12 months by Michael London from the following entities listed on Schedule H: Bonita Athletic Club, Inc.; Michael London Family Trust; PureFitness Downtown Sports Club; PureFitness Holding Company Inc.; PureFitness Pacific Sports Club; Valley Athletic Club LLC; and Westside Athletic Club.

5. The duties and compensation of Debtor's general manager and "department heads" as compared to the service Michael London renders for compensation he is seeking to receive.

6. The parties involved in any pending litigation with California Bank & Trust ("CBT") or involving the Westgate Hotel and the relationship of Bradley Jacobs with McMillian and Associates, as well as whether those parties are paying the compensation for those legal services.

7. The person who is performing the services in exchange for the $3,500.00 "management fee" paid to PureFitness Holdings as listed as a business expense on Debtor's Motion to Use Cash Collateral?

8. An explanation for any changes made between Michael London's declaration and supplemental declaration.   For example, rent/mortgage increases from $0 to $9,187.00 and spousal support decreases from $2,000.00 to $0.

9. All income or shareholder draws made by Michael London or PureFitness Holdings Company, Inc. within one year of the petition date.   For example, Debtor's statement of financial affairs, question 3c answers "none" to the question of whether there were any payments to insiders within the year before the petition.   Yet in the litigation involving CBT - its officer Timothy Williams filed a declaration, *see* Docket 60, ex. G, para. 21-25, that averred that the Debtor had made $265,000.00 of payments to Pure Fitness Holdings in the year before the case.   In addition to the $104,000.00 in payments disclosed in answer to question 3b of the statement of financial affairs, there is apparently another $161,000.00 paid to insiders in the year before the bankruptcy.   Specifically, why these payments were made to PureFitness Holdings, i.e. due to undisclosed loans, profit transfers, or whatever, must be explained.

10. A description of any representation by McMillan and Assc. of any entity associated with Michael London, together with waivers of conflicts of interest executed in connection with the joint representation. For example, the Court notes that McMillan and Assc. simultaneously represented the Debtor and PureFitness Pacific Sports Club in cases pending in this Court.

11. A copy of any agreements, management, shareholder, loan or otherwise, between Pure Fitness Holdings Company Inc. and Debtor.

12. An explanation why Debtor is proposing to make payments on pre-petition unsecured debts owed to Firestone, California Bank and Trust, and Banco Popular in its cash flow statements.

13. Which specifically of the debts owed by Debtor are guaranteed by Michael London or Bonita Athletic Club, Inc.; Michael London Family Trust; PureFitness Downtown Sports Club; PureFitness Holding Company Inc.; PureFitness Pacific Sports Club; Valley Athletic Club LLC; and Westside Athletic Club as referenced on Exhibit H.

14. Whether any insiders are included in the monthly payroll of $150,000.00 as listed in Debtor's cash flow statements.   Are there employees of other entities paid out of this payroll? Do any of these employees provide services to the other entities?

15. In the April 18, 2014 declaration signed and filed by Michael London in state court, attached to the Motion for Relief from stay filed by California Bank & Trust, and of which the Court takes judicial notice, London stated:

> "The destruction of PFD and the related PureFitness centers will occur if the Writ is granted since, as CB&T has long known, the entities loan money to one another to support their operations. Here, as CB&T knows, PureFitness at the

> Westgate is involved in litigation regarding the joint venture and, specifically, Westgate's failure to open the fitness center which has resulted in damages including the default of the instant loan. If the Writ is granted, PureFitness Carlsbad will not be able to assist the Pure Fitness efforts to vindicate their rights and recovery damages necessary to repay the CB&T loan."

There were no inter-company loans included on Debtor's schedules however. This must be explained.

16. Whether the gym membership agreements allow the member to attend any of the PureFitness gyms or only Debtor's facility?   Also Debtor must explain the term length of the membership agreements.   Is there any relationship between EFT and the membership contracts?

17. On the initial schedules and on the first amendment to Schedule B, Debtor's Cash balance on the petition date was listed at $63,800. Yet on 12:07 on June 16, 2014, Debtor filed an amendment to Schedule B to change the cash balance to $4,878.00. This change needs to be explained.